92 F.3d 1186
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Elano Cedeno RIJO, Defendant-Appellant.
 No. 95-3406.
 United States Court of Appeals, Sixth Circuit.
 July 24, 1996.
 
 Before: MERRITT, Chief Judge, and WELLFORD and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant, Elano Cedeno Rijo, was convicted of possessing cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1), and of interstate travel to promote the distribution of cocaine, in violation of 18 U.S.C. § 1952. He appeals the district court's order denying his motion to suppress evidence seized from his automobile on the night of his arrest. Rijo claims that he was illegally detained by police after being stopped for a traffic violation, and that this illegality vitiated the purportedly voluntary nature of the consent he gave police to search the vehicle. We conclude that Rijo's arrest was not illegal and that he validly consented to the search of his car. We therefore affirm.
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 At 10:18 p.m. on August 21, 1994, Ohio State Trooper Terrance Helton pulled over the defendant, Elano Cedeno Rijo, after he observed the defendant's vehicle cross over the center line several times. Trooper Helton videotaped the stop, the ensuing investigation, and the search of the automobile with a mounted camera that is activated when the officer uses his overhead lights. The officer first requested the defendant's registration and license. He then began to ask Rijo questions about how long he had been on the road, where he was headed, and whether he was tired, and about his driving record, the identity of the owner of the vehicle, and the name on the title to the car. The officer requested that the defendant step out of the car, again questioned him regarding the documentation for the vehicle, his driver's license, his destination and point of departure, and other matters. The officer then asked Rijo to sit in the back of his cruiser while he investigated further, and the defendant complied. (Rijo remained locked in the vehicle because the door handles in the back of the patrol car were not operational.)
 
 
 3
 Approximately 20 minutes into the stop, and after determining that the car was not stolen and that Rijo had no outstanding warrants or tickets, the officer stated that he had decided to give Rijo merely a warning. The following conversation ensued:[1]
 
 
 4
 Trooper: Okay, I'm going to have to do some more checking of this as far as the ownership of the vehicle, but as far as the violation I stopped you for ... ah, I'll probably get you going with just a written warning, I'm not going to issue you a ticket or a citation but I do want you to watch your driving, okay if you keep going like that you're going, you're going to be in a crash, ... okay and that is the last thing you want, you were over five times....
 
 Rijo: (Unintelligible)
 
 5
 Trooper: I'm going to give you a warning, a written warning on the violation.
 
 
 6
 Rijo: All right ...
 
 
 7
 Trooper: Okay. I'm not going to give you a ticket.
 
 Rijo: (Unintelligible)
 
 8
 Trooper: You don't have to pay anything.
 
 Rijo: (Unintelligible)
 
 9
 Trooper: You don't have to pay anything.
 
 Rijo: (Unintelligible)
 
 10
 Trooper: But I want you to watch it ... okay?
 
 
 11
 Rijo: All right.
 
 
 12
 (Radio broadcast)
 
 
 13
 Trooper: I definitely want you to watch it, I'll get a warning written up here.
 
 
 14
 Rijo: All right.
 
 
 15
 Trooper: We'll get you going here as quick as we can ... You say you've been in Houston for about a month?[2]
 
 
 16
 Rijo: Yeah.
 
 Trooper: Okay.[3]
 
 17
 (Long pause)
 
 
 18
 So you may not even go back to Puerto Rico, huh.
 
 
 19
 (Pause)
 
 
 20
 I asked you ah, about weapons in your vehicle and you said there was none, ah, there's nothing illegal of any nature in your vehicle, right?
 
 
 21
 Rijo: Right.
 
 
 22
 Trooper: Okay ... we have to keep a close eye on things out here any more I'm sure you're aware of that if you do ah lot of traveling ... Do you do quite a bit, with your family living in New York, do you do quite a bit of traveling?
 
 
 23
 Rijo: Yeah.
 
 
 24
 Trooper: Okay, there is nothing you said no firearms, no type of narcotics, or anything illegal as far as contraband in your vehicle?
 
 
 25
 Rijo: No, no you can check it out.
 
 
 26
 Trooper: Okay ... You said you wouldn't mind if I went and took a look?
 
 
 27
 Rijo: Huh?
 
 
 28
 Trooper: You said you wouldn't mind if I took a look in your vehicle?
 
 
 29
 Rijo: I don't know what you're saying?
 
 
 30
 Trooper: You said I could look in your vehicle?
 
 
 31
 Rijo: Yeah.
 
 
 32
 Trooper: You don't have any objection?
 
 
 33
 Rijo: No ... you want to check it out, you check it out.[4]
 
 
 34
 Soon after terminating this conversation, Trooper Helton requested and then waited for a backup officer to arrive. The two officers then conducted a search of Rijo's car, during which Helton observed that the top of the air conditioning unit had smudges on it, that the screws had been tampered with, and that the seal had been pried apart. As a result, the officer entered Rijo's car and activated the air conditioning to see if it worked. It did not. Helton retrieved some tools from his patrol car, removed several bolts from the air conditioning unit in the engine compartment, raised the cover, and observed several duct tape wrapped packages. He returned to the patrol car and placed Rijo under arrest. The government and the defense subsequently stipulated that the packages contained seven kilograms of cocaine.
 
 
 35
 At a later hearing, the district court denied Rijo's motion to suppress, holding that Trooper Helton had probable cause to stop Rijo, that placing Rijo in the back seat of the patrol car for the time necessary to complete the inquiry as to the status of the vehicle and the defendant was lawful, and that Rijo's understanding of English was sufficient to allow him to give knowing consent. The district court found, however, that this case posed two "very close" questions: First, whether Rijo's consent to search the vehicle was invalid because it was obtained at a time when the defendant was illegally under arrest; and second, whether the search of the vehicle exceeded the scope of the consent. On both questions, the court held in favor of the government. The district judge concluded that a valid consent arose when Rijo stated, "No, you can check it out," and that its validity was not vitiated by the circumstances of Rijo's arrest. The court also held that the search did not exceed the scope of the consent.
 
 II. ANALYSIS
 
 36
 When reviewing a district court's ruling on a motion to suppress, factual findings are reviewed for clear error and questions of law are reviewed de novo. United States v. Roark, 36 F.3d 14, 16 (6th Cir.1994) (citing United States v. Williams, 962 F.2d 1218, 1221 (6th Cir.), cert. denied, 506 U.S. 892 (1992)).
 
 
 37
 The Supreme Court has held that "stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention is quite brief." Delaware v. Prouse, 440 U.S. 648, 653 (1979). An ordinary traffic stop, however, is more akin to an investigative detention rather than a custodial arrest, and the principles announced in Terry v. Ohio, 392 U.S. 1 (1968), apply to define the scope of reasonable police conduct. United States v. Rusher, 966 F.2d 868, 875 (4th Cir.) (citing Berkemer v. McCarty, 468 U.S. 420, 439 (1984)), cert denied, 506 U.S. 926 (1992).
 
 
 38
 Under Terry, the reviewing court must apply a dual inquiry: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 19-20 (emphasis added); see Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality opinion) ("The scope of the detention must be carefully tailored to its underlying justification."). In addition if the initial traffic stop is illegal or the detention exceeds its proper investigative scope, the seized items must be excluded under the "fruit of the poisonous tree doctrine." See, e.g., Wong Sun v. United States, 371 U.S. 471, 484 (1963).
 
 
 39
 Although there is not a great deal of precedent to guide us in this area, one recent decision appears relevant to our discussion.[5] In United States v. Mesa, 62 F.3d 159 (6th Cir.1995), we held that "[o]nce the purposes of the initial traffic stop were completed, there is no doubt that the officer could not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." Id. at 162. In Mesa, the court concluded, after a thorough factual examination, that the police lacked reasonable suspicion sufficient to continue the defendant's detention. While we must follow the holding in Mesa, one factual distinction between this case and Mesa is crucial: here, "the purposes of the initial traffic stop" may not have been completed when Rijo spontaneously offered to let Trooper Helton "check out" his vehicle. The district court found that "it is unclear whether the trooper had (or should have) completed writing the warning" at the time Rijo consented to the search.
 
 
 40
 We acknowledge, as the district court found, that "there are several comments and questions from the trooper which could be construed as a fishing expedition or an invitation to a consensual search." Nevertheless, because the district court did not find that the trooper had (or should have) completed his task, we cannot say that Rijo's continued detention was unjustified at the time he offered to let Helton search his vehicle.
 
 
 41
 Even if the citation had already been handed over to Rijo and his other papers returned, so that he was otherwise free to go, it appears under the facts of this case that Trooper Helton had the requisite reasonable suspicion to ask the questions he did regarding the illegal contrabands and weapons. As the government notes, the officer's suspicions were aroused because: (1) the registration was not in Rijo's name; (2) the title showed the car had been transferred to Bertha DelValle on August 4, 1994, a little over two weeks before Rijo's traffic stop; and (3) the registration card showed that Bertha DelValle's name appeared in the space reserved for the transferor's name but the name of the transferee was left blank. There is also the fact that the defendant's license plate was from Texas, a recognized drug-source state. In addition, the video transcript suggests that Rijo failed to stop immediately--a circumstance which, in combination with other factors, tends to support a finding of reasonable suspicion.
 
 
 42
 For all these reasons, we conclude that the district judge did not err in denying the defendant's motion to suppress, and we AFFIRM the judgment entered in the district court.
 
 
 
 [1]
 The timer shows that the conversation began at 22:37:33
 
 
 [2]
 At this point, the timer shows 22:38:18
 
 
 [3]
 At this point, the time shows 22:38:30
 
 
 [4]
 At this point, the timer shows 22:40:20
 
 
 [5]
 The opinion in another case, United States v. Erwin, 71 F.3d 218 (6th Cir.1995), has a similar set of facts and a holding much like that in Mesa. That opinion, however, was vacated when the court granted the government's petition to rehear on March 6, 1996. See 78 F.3d 232 (6th Cir.1996)